### UNITED STATES v. MANN.

#### (District Court, S. D. Georgia, W. D. December 5, 1907.)

POST OFFICE—"MONEY ORDER FUNDS"—EMBEZZLEMENT.

Rev. St. § 4045 (U. S. Comp. St. 1901, p. 2751), defines "money order funds" to consist of "all money received for the sale of money orders, including all fees thereon, all money transferred from the postal revenues to the money order funds, all money transferred or paid from the money order funds to the service of the Post Office Department," and declares that all money order funds transferred from one postmaster to another shall be deemed and taken to be money order funds and money in the treasury of the United States. Section 4046 declares that every postmaster, assistant, clerk, or other person employed in or connected with the business or operations of any money order office, who converts to his own use, in any way whatever, any portion of the "money order funds," shall be deemed guilty of embezzlement, etc., and that it shall be prima facie evidence of a balance against him to produce a transcript from the money order account books of the Sixth Auditor. The post-office regulations authorize rural letter carriers to take and receipt for money from patrons of their routes and to purchase and forward money orders to the persons or corporations for which they are designed. *Held*, that money received and receipted for by a rural letter carrier from patrons of his route, to be used in the purchase and forwarding of money orders, while in the possession of such carrier and before surrender at the post office, did not constitute "money order funds," for the embezzlement of which the carrier could be prosecuted under section 4046.

Alexander Akerman and Robert E. Storrs, for the United States.
Marmaduke G. Bayne, for defendant.

SPEER, District Judge. When the arguments in this case were concluded, the court felt obliged, sua sponte, to direct a verdict of not guilty. The reasons for this action, if sound, would indicate that the large sums which are daily intrusted by the people throughout the country to the rural letter carriers for the purpose of purchasing money orders have not as yet been brought within the scope of the statute defining embezzlement of money order funds.

The accused was a rural letter carrier. He was indicted for the conversion "to his own use" and the embezzlement of "a portion of the money order funds of the United States, to wit, $1.50," intrusted to him by a Mrs. Banks for the purchase of a post office money order, payable to E. V. Rodden & Co., at Chicago; in another count for a

similar embezzlement and conversion of the sum of $2.37, which had come into his possession as rural letter carrier for the purchase of a similar money order for one Mrs. E. N. Goodwin, payable to the Sears-Roebuck Company, at Chicago; and in a third count for a similar conversion of $2.60 in money, which had been delivered to him by one G. W. Thornton for a purchase of a money order on behalf of the said Thornton.

The government relied entirely upon proof that the money reached the hands of the defendant, that it was not heard of thereafter, and that no such money orders were purchased or forwarded. The indictment was framed expressly under section 4046 of the Revised Statutes (U. S. Comp. St. 1901, p. 2752). This provides:

"Every postmaster, assistant, clerk, or other person employed in or connected with the business or operations of any money order office who converts to his own use, in any way whatever, or loans, or deposits in any bank, except as authorized by this title, or exchanges for other funds, any portion of the money order funds, shall be deemed guilty of embezzlement; and any such person, as well as every other person advising or participating therein, shall, for every such offense, be imprisoned for not less than six months nor more than ten years, and be fined in a sum equal to the amount embezzled; and any failure to pay over or produce any money order funds intrusted to such person shall be taken to be prima facie evidence of embezzlement; and upon the trial of any indictment against any person for such embezzlement, it shall be prima facie evidence of a balance against him to produce a transcript from the money order account books of the Sixth Auditor."

This section is gathered from Act June 8, 1872, c. 335, 17 Stat. 299 (U. S. Comp. St. 1901, p. 2751), and Act March 3, 1873, c. 272, 17 Stat. 604 (U. S. Comp. St. 1901, p. 2751). As stated above, it designated those against whom the penalty of the statute may be leveled for embezzlement of any portion of the money order funds. These persons are every "postmaster, assistant, clerk, or other person employed in or connected with the business or operations of any money order office." It enacts what may be prima facie presumption of guilt; that is, "any failure to pay over or produce any money order funds intrusted to such person." The section immediately preceding section 4045 of the Revised Statutes, taken also from Act June 8, 1872, 17 Stat. 299, gives a precise definition of what are money order funds. It provides that:

"All money received for the sale of money orders, including all fees thereon, all money transferred from the postal revenues to the money order funds, all money transferred or paid from the money order funds to the service of the Post Office Department, and all money order funds transferred from one postmaster to another shall be deemed and taken to be money order funds, and money in the Treasury of the United States. And it shall be the duty of the Assistant Treasurer of the United States to open, at the request of the Postmaster General, an account of 'money order funds' deposited by postmasters to the credit of the Postmaster General, and of drafts against the amount so deposited, drawn by him and countersigned by the Sixth Auditor."

It is obvious that these provisions, taken from cognate acts of Congress and from contiguous sections of the Revised Statutes, must be construed together. Here, then, is a definite statement of what are money order funds—a definite statement of those officers who may be indicted for embezzlement thereof. The rural mail carrier legislation is by no means so definite. This, it seems, may all be found in sec-

tion 3874 of the United States Compiled Statutes of 1901 (U. S. Comp. St. Supp. 1907, p. 750). This comprehends all legislation relative to the rural free delivery service from Act April 21, 1902, c. 563, to Act March 2, 1907, c. 2513. In none of this legislation is there any such definition of the crime of embezzlement, or any enlargement of the money order fund, which would create a penal offense, denouncing the action of this defendant as described in the indictment. The Postmaster General is empowered to make, and has made, many regulations for the government and control of these officials; but it is not contended that such regulations could have the effect to enact a criminal statute, or define the crime for which a penalty may be imposed.

Among these regulations there is one which authorizes the rural letter carrier to take and receipt for money from what was termed in the argument the "patrons" of his route, to purchase money orders and forward the same to the persons or corporations for which they are designed. It was charged that in the exercise of this power the defendant became guilty of conversion and embezzlement of funds intrusted to him by the persons named in the indictment; but can it be said that the Congress, in the enactment of sections 4046 and 4045 of the Revised Statutes, had any reference to the rural carriers, who were authorized by a law enacted 30 years later, or that the sums handed to the rural carriers by their patrons can in any manner be regarded as within the scope of the "money order funds" as defined in section 4045?

In order to connect the rural letter carrier, who converts the fund intrusted to him, with the penalties defined in section 4046, the government relies exclusively upon the language, "or other person employed in or connected with the business or operations of any money order office." This is at least debatable. It is a wise general rule, where the constitutional rights of a party are involved, that a penal statute, which may deprive him of such inherent rights, should be strictly construed. U. S. v. Hartwell, 6 Wall. 395, 18 L. Ed. 830. It is obvious that Congress did not in 1872 or 1873 have in mind the rural letter carrier, who came within the classified service in 1902 and the subsequent years. I pretermit further discussion of this point. The question must be determined upon the inquiry whether the sums handed the rural letter carrier by the person who lived along his route for the purchase of money orders can be regarded in any sense as a part of the "money order funds" which Congress has sought to protect by sections 4045 and 4046 of the Revised Statutes, which must be construed together. Are they money received for the "sale of money orders"? We think not, for at the time of the transaction there has been no such sale. The intention of Congress here obviously related to the method of handling money order funds at the time its early legislation on the subject gave this definition. At that time the term "sale of money orders" related to the executed transactions, when the money order clerk at the post office, at his appropriate place in the post office building, had sold the money order to an applicant and received the price, which then became part of the "money order funds." Had Congress intended to enlarge its exact and copious definition of the "money order funds," so as to include the executory transaction between the rural carrier and his

patron, it would have enlarged the definition in language apt and specific for such purpose.

Nor is this "money transferred from the postal revenues to the money order funds," nor is it "money transferred or paid from the money order funds to the service of the Post Office Department," nor is it "money or funds transferred from one postmaster to another." It is nothing more or less than money which the regulation of the Postmaster General authorizes his qualified employé to accept from the citizen, with the duty of purchasing a money order therewith. It becomes no part of the "money order funds" until that purchase has been made, and then it is within the category of the first class of the definition, viz., "money received for the sale of money orders."

Besides, there is much in the language of section 4046 to show that Congress did not have in mind any such person as the defendant or any such fund as that which he received from his patron. The penalty is for not less than six months nor more than ten years, and a fine equal to the amount embezzled; and stronger than all, in the same sentence enumerating the "postmaster, the assistant, the clerk, or other person employed in or connected with the business or operations of any money order office," and defining as against them the crime of embezzlement of money order funds, this clause is also found: .

"And upon the trial of any indictment against any person for such embezzlement, it shall be prima facie evidence of a balance against him to produce a transcript from the money order account books of the Sixth Auditor."

Can it be possible that in the enactment of section 4046 Congress could contemplate that a balance appearing on a transcript from the money order account books of the Sixth Auditor could be placed in evidence against this rural mail carrier for such transactions as those mentioned in these indictments?

I conclude, therefore, that section 4045 defined, and section 4046 made penal, the embezzlement of "money order funds," and that neither affords a definition, or defines a crime, against the rural mail carrier, who, through the permission or direction of the Postmaster General, accepts money from his patron with a view to buy for him or her a postal money order.