## UNITED STATES v. FRIEND.

Crim. No. 268.

United States District Court
S. D. West Virginia.
Jan. 31, 1951.

D. Jackson Savage, Charleston, W. Va., for defendant.

MOORE, Chief Judge.

Defendant was indicted on the charge that he secreted, embezzled and appropriated to his own use and benefit the sum of $320.53 in postal funds belonging to the United States. The trial was had before the Court, after defendant had waived jury trial in writing and the United States had consented to such waiver. At the conclusion of all the evidence defendant moved for an acquittal on the ground that the evidence failed to show that he was guilty of any crime. The Court deferred action on the motion and received briefs from both the United States and the defendant.

The evidence is that defendant was a postal clerk in the post office at Clay, West Virginia. Part of his duties was to sell stamps and postal notes to the public. For this purpose there were placed in his hands stamps and postal notes in the total amount of $629.55. In the Postal Laws and Regulations advances of this type are termed "fixed credits," and the receipt which a clerk is required to sign upon receiving such an advance is called a "fixed credit receipt." Defendant signed receipts of this type when the stamps and postal notes were placed in his possession.

On the back of the receipt which defendant signed for the postal note stock delivered into his possession there appears a quotation from paragraph (d), section 8.23, Postal Laws and Regulations, which reads: "Superintendents and clerks in charge of stations and branches, wholesale and retail stamp clerks * * * shall replenish their fixed credits each day, except that post-office clerks with stocks of less than $100 may replenish their credits whenever the accumulated funds amount to one-fourth of the credit." There is also printed on the back of this receipt in bold face letters the following statement: "It is unlawful for employees to loan or make personal use of official funds or property."

From time to time defendant replenished in part the stock of stamps and postal notes in his possession; but he also from time

A. Garnett Thompson, U. S. Atty., Charleston, W. Va., for the Government.

to time used for his own purposes some of the money represented by sales of stamps and postal notes. At the time of his arrest his stock of stamps and postal notes had not been checked by the postmaster at Clay for eighteen months. His arrest resulted from the fact that two Post Office inspectors appeared at the post office at Clay for the purpose of making an inspection of the office and, as a part of that work, checked the stamps and postal notes in the hands of defendant. He stated to them that there were shortages, the amount of which he did not know, and that he had the money available to make up such shortages. The inspectors found that his total shortages amounted to $320.53. They made a routine demand that he produce the total amount of his fixed credits, and on the day following this demand he made up all shortages. Defendant's statement in evidence is that he used money from the proceeds of stamp and postal note sales without thinking of the consequences; that he felt the stamps and postal notes were his, and that all he had to do was to account for the same in stamps, postal notes or cash, when called upon to do so. He also stated that at all times he had the money necessary to make up any shortages.

The contention of defendant and the ground of his motion for acquittal is that the evidence does not show any fraudulent intent to convert the money derived from the sale of stamps and postal notes to defendant's own use, nor any intent permanently to deprive the United States of its property. It is argued that such intent is an essential element of the crime of embezzlement, and that there can be no conviction without a showing that such fraudulent intent existed.

 The pertinent portion of the statute, 18 U.S.C.A. § 1711, under which the indictment was found reads as follows:

"*Misappropriation of postal funds*

"Whoever, being a * * * Postal Service employee, * * * converts to his own use, * * * except as authorized by law, any money or property coming into his hands or under his control in any manner, in the execution or under color of his office, employment, or service, * * *; or fails or refuses * * * to account for or turn over to the proper officer or agent, any such money or property, * * * upon demand or order of the Postmaster General, either directly or through a duly authorized officer or agent, is guilty of embezzlement; * * *."

It will be readily observed that the gravamen of the offense is the personal use of the money or property by the employee. It cannot be doubted that criminal intent must be present; but that need not be an intent permanently to deprive the United States of the money or property in question. It may be, as it was here, simply the intent to do that which the statute denounces as a crime, namely, to use the money or property for the employee's own purposes. Whether or not the employee hopes, expects or intends to return the money or property to the United States is not material in deciding the question of guilt or innocence. His use of the money constitutes the crime. The courts confronted with this question under Section 1711 and its predecessors have consistently so held. In Hughes v. United States, 8 Cir., 4 F.2d 686, the defendant, a postmaster, was charged with a shortage of some $400 arising from his use of money collected on certain C. O. D. packages in payment of his personal obligations. The defense was offered that defendant had intended to resign as postmaster and make good the shortage by an already arranged sale of his office furniture to his successor. In rejecting this defense the Court pointed out that the intention permanently to deprive is not a necessary element of the offense charged, and that it mattered not that the defendant intended to restore the money so appropriated at a later date. In Vivés v. United States, 5 Cir., 92 F. 355, the defendant, an assistant postmaster, had issued money orders without receiving the money therefor, and then collected the proceeds of those money orders. The Court held that the fact that defendant did not intend to defraud the government, but to collect and account for the money on his settlement, did not constitute a defense to the crime charged. In the case of United States v. Gilbert, C.C.N.D.Ohio, 25 Fed. Cas. pages 1318, 1319, No. 15,205, the de-

fendant, a postmaster of a money order office, was found to be short $500 which he stated had been used by him to pay his debts of a private nature, with the expectation of replacing it in a few days from money due him. The Court held that although the defendant may have intended to replace those funds when thus converted, the statute must be enforced strictly to discourage postmasters from even temporarily using government moneys for private purposes. The Court, in pointing out that the law intends that postal funds be kept absolutely separate and sacred in order both to keep those funds secure and to guard the officers from temptation, stated: "The diversion of money order funds in any way whatever, prohibited by this section, or for any time however short, constitutes embezzlement."

The statute also denounces as the crime of embezzlement the failure or refusal by an employee to turn over money or property of the United States in his possession to an authorized representative of the Postmaster General upon demand. The defendant in this case went to some pains to show that on the day following the demand made upon him by the Post Office inspectors he secured the entire amount of the shortage and paid it over to them. This, he argues, was a reasonable compliance with their demand, and therefore he says he did not fail to turn over any money or property upon demand therefor, as set out in the statute.

It is not necessary for the Court to decide whether or not defendant's payment to the Post Office inspectors was a reasonable compliance with their demand, so as to relieve him from criminal liability under that portion of the statute. His guilt is well established under the other provision of the statute which has been pointed out.

The argument advanced by counsel for defendant that the establishment of the so-called fixed credits in the hands of defendant created the relationship of debtor and creditor as between him and the United States is untenable. Defendant was employed in a capacity which made it necessary for him to have in his hands stamps and postal notes. These he sold to the public for money. He did not buy the stamps and notes from the United States. The word "credit" is simply a convenient term used by the accounting office to designate the property which was entrusted to his custody. No reasonable person could fall into the mistake of believing that stamps and postal notes placed in his custody as a postal employee for sale to the public thereby became his own property; or that he could with impunity use the money derived from the sales of such notes and stamps for his own purposes. No person, having money or property in his hands belonging to another, can be relieved of criminal liability for the misappropriation thereof by the fact that he at all times intended to replace or account for such money or property when called upon to do so.

The defendant will be brought into court for disposition of his case.