**Carl C. WITHROW, Appellant,**

v.

**UNITED STATES of America,**
**Appellee.**
**No. 27259.**

United States Court of Appeals
Fifth Circuit.
Dec. 18, 1969.

Richard P. Warfield, Levin, Askew, Warfield, Graff & Mabie, Pensacola, Fla., for appellant.

Clinton Ashmore, U. S. Atty., Stewart J. Carrouth, Asst. U. S. Atty., Tallahassee, Fla., C. W. Eggart, Asst. U. S. Atty., Pensacola, Fla., for appellee.

Before RIVES, BELL and DYER, Circuit Judges.

RIVES, Circuit Judge.

Withrow was prosecuted under a nine-count information for embezzling various small sums of money [1] on different

---

1. In violation of 18 U.S.C. § 1711:

"*Misappropriation of postal funds*

"Whoever, being a postmaster or Postal Service employee, loans, uses, pledges, hypothecates, or converts to his own use, or deposits in any bank, or exchanges for other funds or property, except as authorized by law, any money or property coming into his hands or under his control in any manner, in the execution or under color of his office, employment, or service, whether or not the same shall be the money or property of the United States; or fails or refuses to remit to or deposit in the Treasury of the United States or in a designated depository, or to account for or turn over to the proper officer or agent, any such money or property, when required to do so by law or the regulations of the Post Office Department, or upon demand or order of the Postmaster General, either directly or through a duly authorized officer or agent, is guilty of embezzlement; and every such person, as well as every other person advising or knowingly participating therein, shall be fined in a sum equal to the amount or value of the money or property embezzled or imprisoned not more than ten years, or both; but if the amount or value thereof does not exceed $100, he shall be fined not more than $1,000 or imprisoned not more than one year or both."

dates in 1967. The jury found him guilty under two counts, Counts 4 and 9. The district court sentenced him to imprisonment for nine months on each of the two counts, the sentences to run consecutively.

Withrow had been employed as a rural letter carrier for approximately twelve years.[2] Two of his duties were (1) to accept money and applications for money orders from customers on his route and (2) to maintain a stamp fund through a fixed amount of credit ($30.00) for customers on his route who wished to purchase stamps.

The postal authorities initiated an investigation into several complaints that money had been delivered to Withrow for the purchase of money orders, but that the money orders had not reached the designated payees. In the course of the investigation a Postal Inspector examined Withrow's stamp box and found only $6.90 in money and stamps instead of the amount of credit extended—$30.-00. The Inspector then warned Withrow of his constitutional rights and questioned him as to the shortage in the stamp fund and as to the several money orders that had been paid for but not received. Withrow acknowledged that he had received the funds from the customers but claimed that he had turned in the applications and money each day to the money order clerk at the branch post office. As to the shortage in the stamp fund, Withrow stated, according to the Inspector,[3] that he had used the money to buy lunches and soft drinks but promised to replace the missing funds the next day when he got his pay check.

To establish its case as to the first eight counts, the government presented testimony of several customers on Withrow's route that they gave applications and money to Withrow to purchase money orders and that these money orders did not reach the designated payees. Postal authorities testified that from the records on hand the money orders applied for had not been issued. Several money order clerks at the branch post office testified that they had received from time to time money order applications from Withrow and that on each such occasion they had written the money order. The superintendent of the branch post office outlined in detail the procedure followed by rural carriers in handling money order applications. Each carrier had a receipt book in order to give the purchaser a receipt. The carrier would then give the window clerk at the branch post office the money, the application and the receipt book with the corresponding stub for each receipt given. The clerk would then total the money against the applications, verify the receipt book, and transfer the documents to a second clerk who would actually write and mail the money orders. During the remainder of the day the rural carrier's receipt book would be kept on top of a safe, put inside the safe at night, and returned to the carrier the next morning. Some twenty-five to thirty employees worked behind the counter and had access to the carrier's receipt books.

As to the fixed stamp fund, each carrier would be furnished with a stamp fund of $30.00 and would be required to keep that sum in money or stamps in his stamp box. Once each quarter the Station Examiner is "supposed" to check the box to see if $30.00 in stamps or money is there. Inspector Gormley testified: "Q. As a matter of fact you don't know when it was last checked? A. I don't know when it was last checked." Withrow testified: "Q. Have you ever been audited for this fixed credit? A. I have never, until Mr. Gormley did."

2. Since March 1963, on a route out of Pensacola, Florida.

3. Postal Inspector John Gormley, who had audited Withrow's stamp fund, testified that Withrow stated he had used the missing $23.10 to purchase lunches and soft drinks. Withrow in his testimony denied that he had made that statement.

Withrow contends that the district court erred in denying his motions for a judgment of acquittal for three reasons: (1) The government failed to establish a material element of both counts—that Withrow was a "postal service employee"; (2) the evidence offered in support of Count 4 was insufficient; (3) to convict under Count 9, there should have been proof that Withrow violated some postal regulation in failing to have in his possession the entire $30.00 stamp fund, and there was no such evidence.

1. Whether or not the government failed to establish a material element of the offense—that Withrow was a "postal service employee."

It is conceded that there are no cases holding that 18 U.S.C. § 1711 (n. 1 *supra*) is not applicable to rural letter carriers. Withrow's argument is based entirely on United States v. Mann, 160 F. 552 (S.D.Ga.1907). The court in *Mann* directed the acquittal of a rural letter carrier charged with embezzlement of money order funds under section 4046 of the Revised Statutes (U.S.Comp.St.1901, p. 2752). The designation of the persons who were subject to prosecution under that section [4] was somewhat different from the designation in the present section 1711 (n. 1, *supra*). In *Mann* the court, concluding that the designation in section 4046 did not include rural letter carriers, emphasized that a comprehen-sive, separate scheme of statutes and regulations (enacted thirty years after section 4046) governed the activities of such carriers.

The government's evidence on this element of the offense came in the testimony of the Postmaster at Pensacola, Florida, Henry A. Brosnaham, Jr. Brosnaham testified that Withrow was a government employee, employed as a rural carrier, working out of the Myrtle Grove Branch of the Pensacola Post Office, working under the Postmaster's jurisdiction. Further, the postal service regulations relative to rural service establish the functions and duties of the rural carrier.[5] 39 C.F.R. § 156.1.

Construing those regulations, we hold that Withrow was a "postal service employee." The district court therefore committed no error prejudicial to Withrow in submitting that question to the jury. Withrow was under the direct control of the postal authorities in Pensacola, and the nature of his duties, as defined in the Regulation, n. 5, *supra*, clearly substantiates his status as a "postal service employee." The case of United States v. Mann, *supra*, does not support Withrow's contention. The relevant statute in *Mann* described in a limited manner the postal employees covered. The present statute prohibiting embezzlement of postal funds—section 1711—applies to all "postal service employees."

4. "Every postmaster, assistant clerk, or other person employed in or connected with the business or operation of any money order office."

5. "§ 156.1 Rural Stations and Branches
"(a) Establishment. Rural stations and branches, both personnel and non-personnel, are established and maintained in communities where a considerable number of people would be seriously inconvenienced if required to transact postal business with rural or star route carriers only, and where it is determined inadvisable to establish an independent post office.

"(b) Functions. (1) Personnel rural stations and branches accept, dispatch, receive and deliver mail, including registered, insured, COD, and certified mail, issue money orders, and sell stamps and stamped paper.
"(2) Nonpersonnel rural stations and branches are self-service units which furnish essential mail services such as the collection and delivery of ordinary mail and sale of stamps. Services such as the sale of money orders, and the acceptance and delivery of certified, insured, registered, and COD mail are provided patrons of nonpersonnel rural stations and branches by the rural carrier at the time he services the unit. * * *"

2. Whether or not the sufficient evidence was offered in support of Count 4.

Withrow claims that the government's case as to the money order embezzlement was based on (1) the testimony of customers on the rural route that they had given money and applications to him, and (2) the testimony of four window clerks at the branch office that the money order applications received from Withrow had always been properly processed. The record clearly demonstrates that the procedures followed by the branch office in processing money orders (especially, retaining Withrow's receipt book to which about twenty-five or thirty employees had access) was contrary to post office rules and was later changed.

In circumstantial evidence cases, this Court has held that "to sustain conviction the inferences reasonably to be drawn from the evidence must not only be consistent with guilt of the accused but inconsistent with every reasonable hypothesis of his innocence." Vick v. United States, 216 F.2d 228, 232 (5 Cir. 1954); Hale v. United States, 410 F.2d 147, 149 n. 3 (5 Cir. 1969); Montoya v. United States, 402 F.2d 847, 850 (5 Cir. 1968). In addition, as pointed out in *Vick*, "in such cases the test to be applied on motion for judgment of acquittal and on review of the denial of such motion is not simply whether in the opinion of the trial judge or of the appellate court the evidence fails to exclude every reasonable hypothesis but that of guilt, *but rather whether the jury might reasonably so conclude.*" Vick v. United States, *supra*, 216 F.2d at 232 (emphasis added). The jury in this case, Withrow argues, could reasonably have concluded from the evidence that one of the postal employees at the branch office misappropriated the money and removed the stub from his receipt book.

■ Whether Withrow's contention is valid or not as to some of the eight counts charging embezzlement of money intended for money orders, it is not valid as to Count Four. That count charged Withrow with embezzling $19.21 on or about May 16, 1967. A Mrs. Fairley testified that on that date she had given him an application for an $18.86 money order and funds ($19.21, which included the fee). When she complained to Withrow that the payee had not received the money order, he replied that she would find a brown envelope in her mail box with the number of the money order. Two days later Mrs. Fairley found the brown envelope with the number 5595480378. Mr. Goodenough, one of the postal clerks, identified that as the number of a $10.00 money order issued on a different date, May 10, 1967. Clearly, as to Count Four, the jury could have reasonably concluded that there was no reasonable hypothesis consistent with Withrow's innocence.

3. Whether or not failure to prove that Withrow violated some postal regulation in failing to have in his possession the entire $30.00 stamp fund requires that he be acquitted under Count 9.

■ The government offered no rule or regulation of the Post Office Department that required Withrow to maintain exactly $30.00 in money or stamps in his possession every day at all times. He paid the $23.10 the day after the shortage was discovered, but the Postal Inspector refused to make another check of his stamp fund. However, it is no defense that Withrow intended to return the money.[6] In *Friend*, appellant argued that intent to permanently deprive the United States of its property was an essential element of the crime. After examining section 1711, however, the court concluded:

"It will be readily observed that the gravamen of the offense is the person-

---

6. United States v. Friend, 95 F.Supp. 580, 582–583 (S.D.W.Va.1951); United States v. Berges, 170 F.Supp. 517, 518 (E.D.N.Y.1959); *see* United States v. Powell, 294 F.Supp. 1353, 1355 (E.D. Va.1968) (conviction under 18 U.S.C. § 641 for embezzling postal funds).

al use of the money or property by the employee. It cannot be doubted that criminal intent must be present; but that need not be an intent permanently to deprive the United States of the money or property in question. It may be, as it was here, simply the intent to do that which the statute denounces as a crime, namely, to use the money or property for the employee's own purposes. Whether or not the employee hopes, expects or intends to return the money or property to the United States is not material in deciding the question of guilt or innocence. His use of the money constitutes the crime."

95 F.Supp. at 582. In the present case, the jury could find that Withrow acknowledged that he had taken the funds.[7] His intention to replace the missing funds did not remove the intent necessary for conviction.

■ Count 9 charges that Withrow "did unlawfully embezzle said sum of money in that he did fail to account for and turn over to the proper officer or agent of the Post Office Department said sum of money as he was then and there required to do by law and the regulations of the Post Office Department. (18 U.S.C. 1711.)" From the record, it appears that the government did not prove or call attention to a specific postal regulation which required appellant to account for the stamp funds. The court in its instructions to the jury, however, charged as a matter of law "that the law forbids personal use by a postal service employee" of the funds in his stamp fund. We agree that, even without a Regulation, Withrow's personal use of the money was not authorized and was a conversion to his own use in violation of the statute, n. 1, supra.

■ Considering the small amounts involved, $19.21 and $23.10, or a total of $42.31, and the surrounding circumstances, an eighteen-month sentence (two nine-month sentences to run consecutively), while within the statutory limits (see n. 1, supra), may seem severe. However, we have not seen the pre-sentence report. In any event, we have no authority to review the apparent severity of the sentence. We can do no more than suggest to the district court the exercise of its authority, if that seems appropriate, to reduce the sentence within sixty days after receipt of the mandate of affirmance. See Rule 35, Fed.R.Crim.P. The judgment is

Affirmed.