**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Grace Lorine LESTER,
Defendant-Appellant.**

No. 75–3746.

United States Court of Appeals,
Fifth Circuit.

Oct. 29, 1976.

**500**

Marc H. Richman, Dallas, Tex., for defendant-appellant.

Frank D. McCown, U. S. Atty., Ft. Worth, Tex., Judith A. Shepherd, Asst. U. S. Atty., Dallas, Tex., for plaintiff-appellee.

Before BROWN, Chief Judge, and JONES and GOLDBERG, Circuit Judges.

JOHN R. BROWN, Chief Judge:

Postal employee, Grace Lester, was convicted by jury for converting to her own use, in violation of 18 U.S.C.A. § 1711,[1] a $50 U.S. Postal Service Money Order which had come into her hands and under her control by virtue of her employment.

It is uncontroverted that Lester took the money order but she claims that she paid for it by placing $50.35 in her drawer at the time she took the blank money order. An audit of her cash drawer one month nine days after the incident revealed an excess of $49.83 in funds. Lester's position is that the Trial Judge should have dismissed the indictment for failure to allege criminal intent, an essential element of conversion and that the jury should have been instruct-

ed on the defense of payment. We reverse on the basis of the charge. If at the time she took the blank money order, she actually put the money in the drawer, there can be no conversion in the sense of the statute and no misappropriation took place.

### The Trap Is Set

In late December 1974 a postal inspector, Crawford, began an investigation into financial irregularities at the South Oak Cliff Station in Dallas, Texas. The investigation focused upon Grace Lester, an employee of the U.S. Postal Service at the South Oak Cliff Station. Crawford arranged to test the honesty of this employee. He directed Howard Henderson, a postal supervisor, to purchase a $50 money order and deliver it to him. The money order remained blank and was as negotiable as currency. Upon delivery, Crawford made a xerox copy of the money order and thereafter enlisted the aid of another employee, Margaret Edwards, for the purpose of accompanying him to the station where Lester was employed so as to test her honesty. The money order and customer's receipt were given to Edwards in a white envelope. Upon arrival at the South Oak Cliff Station, Edwards looked through the zip code directory and then approached the counter where Lester worked. There, she purchased some ten cent stamps and then handed Lester the envelope containing the blank money order and customer's receipt saying the money order must have been lost by someone and that she was turning it in so that the rightful owner could get it back. Lester took the envelope and said she would take care of it.

### The Trap Is Sprung

In January 1975, the money order was cashed at a Dallas grocery store showing, in

---

1. 18 U.S.C.A. § 1711, in relevant part, provides that:

 "Whoever, being a Postal Service officer or employee, . . . converts to his own use, . . . except as authorized by law, any money or property coming into his hands or under his control in any manner, in the execution or under color of his office, employ-

 ment or service, whether or not the same shall be the money or property of the United States . . . or to account for or turn over to the proper officer or agent, any such money or property, when required to do so by law or the regulations of the Postal Service . . . is guilty of embezzlement; . . . ."

the appropriate space on the money order, C. Edwards "as purchaser". This person was later identified as Lester's daughter, Carol Ann Edwards.

In April 1975 after the cashed money order had been processed through the postal service, Crawford resumed his investigation of Lester. She was informed that she was a suspect in the criminal investigation and was advised of her rights. In response, Lester gave conflicting stories as to what happened to the money order. First she said it was a gift and later said her boyfriend asked her to purchase it.

### The Charge Is Made

Lester was indicted under 18 U.S.C.A. § 1711 for converting to her own use, without authorization by law, a United States Postal Money Order that had come into her hands and was under her control in the execution of her employment and service as an employee of the United States Postal Service. Although not charged expressly in the indictment, the Government further supports its charge by asserting that the conversion was without authorization by law due to the fact that Lester did not follow a U.S. Postal Service Regulation[2] that set out the proper procedure for handling a lost money order.

Lester moved to dismiss the indictment based on the failure of the Government to allege criminal intent.[3] The motion was overruled and trial by jury was had. Lester, on her testimony, admitted taking the money order but she said she purchased the money order by placing $50.35 in her cash drawer. An audit of her cash drawer one month nine days later revealed an excess of $49.83 in funds. The Trial Judge refused to instruct the jury on payment as a defense. Lester was convicted and sentenced to five months imprisonment.

Lester asserts the District Court erred: (i) in denying the motion to dismiss the indictment for failure to allege criminal intent, (ii) in failing to instruct the jury on the defense of payment, and (iii) in failing to grant a motion for judgment of acquittal, as the evidence was insufficient.

### Sufficiency Of The Indictment

The indictment alleges that Lester converted to her own use, without authorization by law, the money order in violation of 18 U.S.C.A. § 1711. Lester argues that the statute requires a formal, express allegation of criminal intent. We are not so persuaded. The Supreme Court, in *Hagner v. U. S.,* 285 U.S. 427, 52 S.Ct. 417, 76 L.Ed. 861 (1932), held that the test of the sufficiency of an indictment was whether it contained all the elements of the offense charged. The indictment, for all practical purposes, traced the exact language of the statute. The pleading of the allegations in terms of the statute was sufficient. In *Downing v. U. S.,* 5 Cir., 1965, 348 F.2d 594, 599, we held that "[a]n indictment which follows the language of the statute is ordinarily sufficient unless the statute omits an essential element of the offense." The term convert implies, by its very legal na-

---

**2.** This assertion was based on 39 C.F.R. § 243.-2(c) which requires that:

> When articles are turned in to employees, the name and address of the finder shall be recorded so the article may be returned to him if not claimed by the loser. If the name of the finder cannot be obtained, and the article is not claimed within 30 days, it must be disposed of in the same manner as unidentified material found loose in the mail. Do not return postal money orders to the finder. Mail to Money Order Branch, Accounting Division, U.S. Postal Service, General Accounting Office Building, Washington, D.C. 20260, with a memorandum of explanation.

**3.** The indictment contained the following language:

> "On or about January 4, 1975, . . . ., GRACE LORINE LESTER, defendant, being a United States Postal Service employee, *did convert to her own use, without authorization by law,* a United States Postal Money Order, . . . ., in the amount of $50.00, which money order had come into her hands and was under her control in the execution of her employment and service as such employee of the United States Postal Service.
>
> A violation of Title 18, United States Code, Section 1711."
> [Emphasis added].

ture, some kind of willful purpose and wrongful intent in the taking of property that does not belong to the converter.[4] We agree with the Government that the allegation "did convert to her own use" could not have confused the defendant. "The purpose of the indictment in criminal proceedings is to apprise the defendant of the charges he must be prepared to meet." *U. S. v. Coleman,* 5 Cir., 1971, 449 F.2d 772, 773. The indictment in this case was sufficient to apprise the defendant of the charges against her and it was sufficient to imply an allegation of wrongful intent.[5]

### Jury Charge

Lester's testimony was that at the time she took the postal money order, she substituted her personal funds thereby effecting a payment if not a purchase. She says that the Trial Court should have instructed the jury on this defense.[6]

■■■ We agree. Lester was entitled to a charge[7] that if the jury found, or had reasonable doubt thereon, that in fact at the time she took the blank money order, she actually put the money in the cash drawer, there can be no conversion in the sense of this statute and no misappropriation took place. Conviction under 18 U.S.C.A. § 1711 for conversion requires a finding of a willful knowing act done with a wrongful intent to deprive the owner or the United States of his property. The threshold question becomes whether one can convert property for which the person paid full value. We think not. If the money order was paid for, the payment would negate the

---

4. At common-law, in a civil tort action for conversion, the intent, good faith or mistake on the part of the converter would not be relevant, except for recovering exemplary damages. *See Morissette v. U. S.,* 342 U.S. 246, 270 n. 31, 72 S.Ct. 240, 96 L.Ed. 288 (1952). The gravamen of conversion is the distinct act of exerting wrongful dominion over another's personal property that is inconsistent or in denial of his title or right. *Quaker Oats Co. v. McKibben,* 9 Cir., 1956, 230 F.2d 652; *Lambros Seaplane Base v. The Batory,* 117 F.Supp. 16, affirmed in part and reversed in part, 2 Cir., 1954, 215 F.2d 228; *General Ins. Co. v. Sessions,* 331 S.W.2d 812, 814 (Tex.Civ.App.); *Presley v. Cooper,* 278 S.W.2d 237, 241 (Tex.Civ.App.).

Conversion in a criminal context, by its nature, involves the element of a purposeful intent to assert dominion over another's property. *See generally Hawkins v. United States,* 5 Cir., 1975, 458 F.2d 1153.

5. *Withrow v. U. S.,* 5 Cir., 1969, 420 F.2d 1220, is not to the contrary. That case does stand for the proposition that the proof must show intent.

6. The Trial Court refused to charge the jury that contemporary substitution of defendant's personal funds for the money order was a defense. Instead, the Court charged as follows: "You are further instructed that [i] it is not a defense to the crime charged that the defendant *at any time,* if you so find, substituted her personal funds or property for any money or property which may have come into her hands by virtue of her employment and service with the United States Postal Service, if you find the defendant to have been so employed. Nor [ii] is it a defense to the crime charged that the defendant had an intention to repay. For the

law does not permit a Postal Service officer or employee to make any such exchange of funds or property, if, indeed, you find such an exchange of funds to have occurred. Similarly, [iii] any intention to repay, if, indeed, you find the defendant to have had such intentions, is no defense." [Emphasis added and brackets inserted to distinguish between (a) actual payment and (b) intention to repay in the future.]

7. This Court, in *Perez v. United States,* 5 Cir., 1961, 297 F.2d 12, enunciated the basic entitlement of a defendant to a charge on a defense he has raised by evidence and which, if believed, constitutes a legal defense. We held:

It is elementary law that the defendant in a criminal case is entitled to have presented instructions relating to a theory of defense for which there is any foundation in the evidence. . . . A charge is erroneous which ignores a claimed defense with such a foundation. . . . The charge to which he is entitled, upon proper request, in such circumstances is one which precisely and specifically, rather than merely generally or abstractly, points to his theory of defense, . . ., and one which does not unduly emphasize the theory of the prosecution, thereby deemphasizing proportionally the defendant's theory. 297 F.2d at 15, 16. *See Rubin v. United States,* 5 Cir., 1969, 414 F.2d 473, *cert. denied,* 396 U.S. 1011, 90 S.Ct. 571, 24 L.Ed.2d 503 (1970); *Bursten v. United States,* 5 Cir., 1969, 395 F.2d 976, *cert. denied,* 409 U.S. 843, 93 S.Ct. 44, 34 L.Ed.2d 83 (1972); *United States, v. Hoffa,* 6 Cir., 1965, 349 F.2d 20, 51, *affirmed,* 385 U.S. 293, 87 S.Ct. 408, 17 L.Ed.2d 374 (1966), *reh. denied,* 386 U.S. 940, 951, 87 S.Ct. 970, 17 L.Ed.2d 880 (1967).

element of wrongful intent necessary for conviction under the statute even though that might amount to a violation of the internal regulations. (See note 2, *supra* ).

This case is to be distinguished from cases that hold the intent to repay in the future is no defense to a charge of conversion. Here, we are faced with testimony the jury had to consider that payment was made at the same time the property was taken. Taking with an intent to repay contemplates replacement at some point in the future, not simultaneously with the taking. We adhere to those cases that consistently hold that the intention to replace missing funds does not remove the intent necessary for conviction.[8]

 The Government contends that Lester's acts were not in conformity with postal regulations that delineate how a lost money order is to be handled.[9] We do not believe Congress intended a violation of this nature to constitute a crime, under an indictment charging conversion and not the possible alternative ground of a failure to "account for or turn over . . . any such money . . . when required to do so by . . . regulation of the Postal Service." (See note 1, *supra* ). This avoids our deciding whether the rules and regulations of the present United States Postal Service have the force of law for criminal prosecution.

Under the former governmental system, the Post Master General of the Post Office Department, the Postal Service's, predecessor, was empowered to promulgate rules and regulations that had the force and effect of law.[10] 5 U.S.C.A. § 301 [11] authorized heads of the Executive Department to promulgate regulations to govern their departments and 5 U.S.C.A. § 101 [12] identified the Post Office Department as an Executive Department. Regulations of an Executive Department promulgated pursuant to this authority have the force and effect of law when not inconsistent with law.[13] However, the Postal Reorganization Act of 1970 [14] abolished the Post Office Department and established the United States Postal Service. Although, the Postal Reorganization Act gives the Postal Service the authority to adopt, amend and repeal its rules and regulations,[15] there may be doubt that Congress intended the rules and regulations to have in a criminal context the force of law. Specifically, in the creation of the United States Postal Service, the Post Office Department was expressly deleted from 5 U.S.C.A. § 101 and the Postal Service was not included as an Executive Department.[16] Additionally, the legislative history of the Postal Reorganization Act [17] does not indicate a congressional purpose to imbue Postal Service regulations with the force of law as the basis for a criminal charge. But under this indictment, now remanded for new trial, noncompliance with the Postal Service regulation could not be used to constitute the criminal offense charged.[18]

---

**8.** *Withrow v. U. S.,* 5 Cir., 1969, 420 F.2d 1220; *United States v. Berges,* 170 F.Supp. 517, 518 (E.D.N.Y.1959); *United States v. Friend,* 95 F.Supp. 580, 582–83 (S.D.W.Va.1951).

**9.** See note 2, *supra.*

**10.** *United States v. Foster,* 233 U.S. 515, 34 S.Ct. 666, 58 L.Ed. 1074 (1914); *Rosen v. United States,* 245 U.S. 467, 38 S.Ct. 148, 62 L.Ed. 406 (1917).

**11.** 5 U.S.C.A. § 301 (1967).

**12.** 5 U.S.C.A. § 101 (1967), as amended, 5 U.S. C.A. § 101 (1976).

**13.** *Tasker v. U. S.,* 178 Ct.Cl. 56 (1967).

**14.** Act of August 12, 1970, Pub.L. No. 91–375, § 2, 84 Stat. 719, amending 39 U.S.C.A. § 101 et seq. (1967) (codified at 39 U.S.C.A. § 101 et seq. (1976)).

**15.** 39 U.S.C.A. § 401(2) (1976).

**16.** 5 U.S.C.A. § 101 (1976), amending, 5 U.S. C.A. § 101 (1967).

**17.** 1970 U.S.Code Cong. and Admin.News, p. 3649.

**18.** We do not decide the extent to which, if any, the regulation is admissible to prove the elements of intentional conversion.

*Sufficiency Of Evidence*

We have no doubt that given proper instructions there was more than ample evidence to sustain a finding of guilty.

REVERSED.