**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Donald J. MINICK, Defendant–Appellant.**

No. 80–1178.

United States Court of Appeals,
Seventh Circuit.

Argued Sept. 16, 1980.
Decided Dec. 15, 1980.

John C. Grimm, Auburn, Ind., for defendant–appellant.

Christina McKee, Asst. U. S. Atty., Fort Wayne, Ind., for plaintiff–appellee.

Before CUMMINGS, SPRECHER and BAUER, Circuit Judges.

BAUER, Circuit Judge.

The issue here is whether an indictment charging a violation of 18 U.S.C. § 1711, conversion by a postal employee, is fatally defective for failing to allege the criminal intent required by the statute. We hold that it is not, and affirm the judgment of conviction entered by the district court.

I

On September 25, 1979, United States Postal Inspectors conducted an investigation at the Northwood Postal Station in Fort Wayne, Indiana. Defendant–appellant Donald J. Minick was working that day at a customer service window. His duties included the sale of money orders. Tr. 6.

Money orders are issued and sold sequentially. Tr. 7–8. Each postal employee is held accountable for the money orders he sells, and must file a daily financial report which lists his sales. Tr. 7–8. Minick's daily financial report for September 25 listed the sale of four money orders and the issuance of one spoiled money order. The money order numbers were numbers 861, 862, 863, 864, and 865. Tr. 10.

Postal Inspector Brophy testified that on September 25 he entered the Northwood Station at 3:46 p. m. and purchased a money order in the amount of $150 from Minick. Tr. 25. He asked Minick if the money order was as good as a certified check and Minick answered yes. Brophy placed the money order, number 862, in an envelope from a Travelodge Motel. He did this in Minick's view. Tr. 25–28.

Postal Inspector Aske, who had waited for Brophy in the parking lot outside the postal station, testified that he received money order 862, still in the Travelodge envelope, from Brophy. The two inspectors drove to a nearby parking lot. There Aske drove the wheel of his car over the envelope, leaving a tire mark by which he could identify it. He then returned to the Northwood Station, entered the building at 4:06 p. m., and handed the envelope containing money order 862 to Minick at the customer service window. Aske explained that he had found the envelope in the parking lot, discovered the money order, and felt he should turn it in at the post office. Minick accepted the envelope containing money order 862. Tr. 35–39. Neither the "pay to" nor the "purchased by" spaces on the money order had been filled in. Tr. 40.

Postal Inspector Famuliner entered the Northwood Station at 4:15 p. m. She approached Minick's customer service window

and asked to purchase three money orders in the amounts of $150, $15 and $12.46. Minick took three money orders out of his drawer and went to a table where the money order imprinter machine was located. He then returned to his drawer, opened it, made some movements, and handed three money orders to Famuliner. Minick sold her money order 862, which was the $150 money order he had earlier sold to Postal Inspector Brophy, and which had been returned to him by Postal Inspector Aske. The other two money orders Minick gave to Famuliner were numbered 863 and 864, in the respective amounts of $15.00 and $12.46. Tr. 42–47.

At 5:17 p. m., Minick took a white envelope from his cash drawer and placed it in his left rear pants pocket. He then left the postal station. Tr. 60. Postal inspectors waiting outside the building arrested Minick and took him to the supervisor's office inside the Northwood Station. Tr. 51–52.

There Minick was asked to empty his pockets. He did so, removing from his left rear pants pocket the Travelodge envelope, which now contained postal money order 865 in the amount of $150. Tr. 62–67. The physical appearance of money order 865 differed from that of the other three money orders introduced into evidence. The top page of money order 865 was the customer's receipt, still attached to the actual money order beneath it. In the ordinary course of business, the postal employee selling the money order would have separated the customer's receipt from the actual money order, and then given the two separate documents to the customer. Money orders numbers 862, 863, and 864 were all handled in this way by Minick. Money order 865, however, was still intact when taken from Minick. Tr. 68–69. No purchaser or payee was indicated on the money order.

Minick was indicted by a federal grand jury in the Northern District of Indiana and charged with a one–count violation of 18 U.S.C. § 1711, conversion by a postal employee, on October 22, 1979. He was convicted after a trial held before the Honorable Jesse E. Eschbach in the United States District Court for the Northern District of Indiana, Fort Wayne Division. Minick was sentenced to a term of imprisonment for five years, six months to be served in a federal correctional institution, the remaining four and one–half years to be spent on probation.

## II

Section 1711 of Title 18, United States Code, provides in part:

> Whoever, being a Postal Service officer or employee, loans, uses, pledges, hypothecates, or converts to his own use . . . any money or property coming into his hands or under his control in any manner, in the execution or under color of his office, employment, or service, whether or not the same shall be the money or property of the United States . . . is guilty of embezzlement . . . .

The indictment in this case charged that:

> On or about the 25th day of September, 1979, in the Northern District of Indiana, DONALD J. MINICK, being a United States Postal Service employee, did convert to his own use, without authorization by law, a United States Postal Money Order, number 2,446,096,862, dated September 25, 1979, in the amount of $150.00, which money order had come into his hands and was under his control in the execution of his employment and service as such employee of the United States Postal Service, all in violation of Section 1711, Title 18 of the United States Code.

An indictment must allege each and every element of the offense to be sufficient. *United States v. Debrow*, 346 U.S. 374, 74 S.Ct. 113, 98 L.Ed. 92 (1953). Criminal intent is an essential element of a violation of 18 U.S.C. § 1711. If the indictment here cannot be said to include an element of intent, the indictment does not allege an offense, and the conviction must be reversed.

The indictment tracked the statutory language of 18 U.S.C. § 1711. The Supreme Court has held that

[i]t is generally sufficient that an indictment sets forth the offense in the words of the statute itself, as long as "those words of themselves fully, directly, and expressly, without any uncertainty or ambiguity, set forth all the elements necessary to constitute the offense intended to be punished." *United States v. Carll*, 105 U.S. 611, 26 L.Ed. 1135 (1882). *Hamling v. United States*, 418 U.S. 87, 117, 94 S.Ct. 2887, 2907, 41 L.Ed.2d 590 (1974).

In *United States v. Lester*, 541 F.2d 499, 502 (5th Cir. 1976), the Fifth Circuit held that the term "convert" in the statute implied "some kind of willful purpose and wrongful intent in the taking of property that does not belong to the convertor." An indictment charging conversion, therefore, contains the necessary allegation of intent. *Id.* We agree. The indictment put the appellant on notice of the charges against him. *Hagner v. United States*, 285 U.S. 427, 52 S.Ct. 417, 76 L.Ed. 861 (1932). The trial court recognized that the prosecution was required to prove criminal intent, and the appellant was prepared to meet the issue. *United States v. Hollinger*, 553 F.2d 535, 548–49 (7th Cir. 1977).

The Ninth Circuit has held that a similar indictment was insufficient because it believed that "convert" describes no more than a tort. *United States v. Morrison*, 536 F.2d 286, 289 (9th Cir. 1976). *Lester* dealt with this argument when it observed: "Conversion in a criminal context, by its nature, involves the element of a purposeful intent to assert dominion over another's property." *United States v. Lester*, 541 F.2d at 502 n.4.

■ We hold that the indictment here was sufficient to allege an offense under 18 U.S.C. § 1711. Appellant's other contention, that the evidence was insufficient for conviction, is without merit.

AFFIRMED.