STOULIG, Judge.
Plaintiff, Clarence D. Starks, doing business as T V Facts, a Texas domiciliary, filed suit against Louisiana domiciliary Max Marsh[1] for $2,940, representing the unpaid balance due for printing the magazine “T V Facts of Louisiana” between May 30, 1971 and June 25, 1972. Defendant answered with a general denial, and reconvened for $23,720, his alleged loss of advertising revenues resulting from plaintiff’s alleged incompetent and grossly negligent printing of the magazine. Marsh also filed a third party complaint against Local Consumer Enterprises Corporation from whom he had obtained the franchise to publish the magazine for distribution in the New Orleans metropolitan area. The theory of liability is the franchise required Marsh to use a printer designated by the *466 third party defendant, and Local designated plaintiff, an inept printer.
From a judgment awarding plaintiff $2,940 and dismissing defendant’s recon-ventional and third party demands defendant has appealed.
From defendant’s standpoint, the value of the franchise was that it provided a vehicle Marsh could use to sell advertising. The magazine, distributed to hotels and motels in the New Orleans area, carried local television schedules and news items about television personalities. Marsh’s appeal to advertisers was that the names of their eating and entertainment establishments would be placed before the tourist when he consulted the booklet “T V Facts of Louisiana,” which was furnished to the guest without charge.
Defendant published “T V Facts in Louisiana” on a weekly basis from May 30, 1971 (the inception of the franchise) through December 31, 1971, and then reverted to a monthly schedule because of flagging finances. This continued from January until June, 1972, when defendant surrendered its franchise. Defendant filed in evidence several issues of the magazine published in 1971 that amply demonstrated his complaints of extremely poor quality of workmanship. The primary complaint was the excessive ink used made some of the advertising copy illegible and also amateurish.
Plaintiff’s general manager attempted tó place the blame on quality of copy furnished by defendant or other errors attributable to him; but his testimony in this regard is not persuasive because the quality of the ads themselves with regard to shading and/or legibility varied from issue to issue. Defendant proved that Nick Karno, with whom he had two advertising contracts for a year, cancelled after the ads had been running for approximately four months because the magazine was printed in an incompetent and unattractive manner.
In January 1972, plaintiff and defendant met in Dallas to discuss their problem. Defendant contends the conference resulted in a compromise whereby plaintiff offered, and defendant accepted, a credit of $864 against Marsh’s overdue balance, which left an outstanding indebtedness of $2,740. The credit was allowed to compensate defendant for the printing mistakes, according to plaintiff, and to assist him in continuing the publication of “T V Facts in Louisiana.” At the same conference, the litigants arranged for monthly rather than weekly, publication and agreed to printing costs of $290 for 20,000 copies of each future issue. Plaintiff introduced in evidence his letter to Marsh which stated it was confirming the agreements reached at the Dallas meeting and reiterated, inter alia, the new printing price for the monthly publication of the magazine and the adjusted outstanding balance owed by defendant which he agreed to amortize at the rate of $100 per month. Thus, according to plaintiff, defendant was to pay a total of $390 monthly after January 1972, $290 to be applied to current charges and $100 to be credited against the old balance. Stark testified that between January and May 8, 1972 he received no payments of $100 to liquidate the outstanding balance of January; therefore on May 8, 1972, he wrote to defendant demanding payment of the $290 due for the April 1972 issue plus at least $100 on the “old balance.” Marsh remitted a check for $390 almost immediately. In corroboration of his testimony, plaintiff filed in evidence a deposit slip of Wynnewood State Bank of Dallas, Texas, reflecting that of the amount deposited to the account of “T V Facts” on May 15, 1972, $390 had been credited to Max Marsh, $290 of which was applied to payment of Invoice No. 3505 and $100 toward “Old Bill.”
Defendant denied: (1) the $864 credit was accepted as a compromise of his complaints of printing inadequacies in the 1971 publications; (2) he agreed to liquidate the January 1972 balance at the rate of *467 $100 per month; and (3) that he received correspondence in which plaintiff confirmed, the compromise reached at the Dallas meeting (January 21, 1972 letter) and demanded payment as outlined in the letter of May 8, 1972.
We do not ascribe to coincidence the fact that defendant remitted before May IS the $390 demanded in the May 8 letter, which he denied receiving, particularly since we find his testimony bearing upon this aspect of the matter is generally evasive and contradictory. After reviewing the evidence we find defendant agreed to accept a credit of $864 against the then outstanding balance due plaintiff in full settlement about his complaints as to the quality of printing. In addition they negotiated different printing arrangements for the future.
The effect to be given these transactions must be determined by principles of Texas law under the lex loci contractus doctrine.[2] Plaintiff bases his claim on a compromise on the pre-Dallas contract, coupled with a demand for unpaid services rendered under the new agreement. Defendant contends no suit may be entertained on the first contract because the January transaction constitutes an attempted novation which— though invalid for various reasons — extinguished the first agreement.
We find merit in plaintiff’s position. Under Texas law, in order for a no-vation to take place, there must be manifested an intent by the parties — either express or implied — to extinguish the old obligation.[3] The evidence clearly demonstrates plaintiff had no intent to do so, in fact plaintiff’s accounting system clearly proves he intended to treat the two agreements separately. Thus, plaintiff’s verbal compromise, although deficient in form under Louisiana law,[4] is valid under Texas law[5] where the agreement was confected and enforceable.
For the reasons assigned, the judgment appealed from is affirmed.
Affirmed.
REDMANN, J., dissents in part with written reasons.

. Defendant averred he was erroneously cited as “Max Marsh, d/b/a T. V. Facts of Louisiana,” rather than Max Marsh, his proper designation.

. LSA-C.C. art. 10; Bologna Brothers v. Morrissey, 154 So.2d 455 (La.App.2d Cir.1963).

. Meador v. Rudolph, 218 S.W. 520 (Tex.Civ.App., 1920).

. C.C. art. 3071.

. Myers v. Thomas, 502 S.W.2d 941 (Tex.Civ.App., 1973).