Mrs. Constance A. FEÑASCI et al., Plaintiffs-Appellees Cross Appellants,

Employers National Insurance Co., Intervenor-Appellee Cross Appellant,

v.

TRAVELERS INSURANCE COMPANY, Defendant-Appellant Cross Appellee.

No. 79–3703
Summary Calendar.

United States Court of Appeals, Fifth Circuit.
Unit A

April 17, 1981.

Rehearing and Rehearing En Banc Denied June 18, 1981.

See 648 F.2d 446.

---

**988**

Jones, Walker, Waechter, Poitevent, Carrere & Denegre, John C. Combe, Jr., New Orleans, La., for defendant-appellant cross-appellee.

John Paul Massicot, New Orleans, La., for Constance A. Fenasci, et al.

Young & Mars, W. W. Young, III, Theodore A. Mars, Jr., New Orleans, La., for Rita Breitling Cook, et al.

Monroe & Lemann, Steven O. Medo, Jr., New Orleans, La., for Marie T. Bannon, et al.

Lemle, Kelleher, Kohlmeyer & Matthews, Albert H. Hanemann, Jr., New Orleans, La., for Employers National Ins. Co.

Before BROWN, POLITZ and TATE, Circuit Judges.

PER CURIAM:

This action arose out of an automobile accident in which three employees of Fischbach and Moore, Incorporated (F & M), Thomas J. Fenasci, John A. Bannon and Donald Eugene Cook, riding in a pick-up truck owned by F & M, were killed on their way to work in a collision between the truck and a vehicle operated by Preston A. Julien. Their survivors (Fenasci *et al.*) brought this diversity action in Federal District Court against Travelers Insurance Company (Travelers) which insured F & M.[1]

The jury found that the sole and proximate cause of the accident was the negligence of Preston A. Julien, who had only $10,000 of public liability insurance. Because F & M had uninsured motorist coverage under its policy with Travelers, the insurance company was held liable for the entire verdict of $1,400,000.

This appeal presents multiple issues, all of which are carefully and exhaustively briefed by able counsel. We shall address each in turn.

### I. Interest From Date of Judicial Demand

Included in its final judgment, the District Court awarded interest from the date of judicial demand, relying on LSA–R.S. 13:4203 which provides:

> Interest on judgments from judicial demand in ex delicto cases
>
> Legal interest shall attach from date of judicial demand, on all judgments, sounding in damages, "ex delicto", which may be rendered by any of the courts.

Travelers contend in their cross appeal that this was erroneous because its liability arose out of an insurance contract, not a tort, and § 4203 is inapplicable. The Fenascis argue that nevertheless, Travelers is bound to pay the damages of a tort-feasor and the liability is "ex delicto."

■ The District Court thought that Travelers' was the more logical position but nonetheless awarded interest, feeling bound by Louisiana cases in which interest was awarded against uninsured motorist carriers. *Butler v. MFA Mutual Insurance Co.*, 356 So.2d 1129 (La.App. 2d Cir. 1978); *Williams v. State Farm Mutual Automobile Insurance Co.*, 349 So.2d 1275 (La.App. 1st Cir. 1977); *Bourgeois v. Government Employees Insurance Co.*, 316 So.2d 804 (La. App. 1st Cir. 1975); *Shirley v. Aetna Casualty & Surety Co.*, 256 So.2d 462 (La.App. 2d Cir. 1972). In doing so, the District Court was correct. The *Erie* doctrine compels Federal Courts to follow state law. *In re Hoover*, 447 F.2d 195, 198 (5th Cir. 1971).

### II. Testimony As To Gross Income Only

During trial, counsel for Travelers was ordered by District Court not to cross-examine Fenascis' economic experts, nor to ob-

---

1. Counsel for the parties stipulated F & M is a foreign corporation organized and existing under the laws of the State of New York with its principal place of business being located in New York City, New York.

tain any direct testimony from its economic experts bearing on the issue of loss of economic support to the survivors on a net or after tax basis. Only gross income figures were allowed to reach the jury.

Travelers suggests District Court erred because the jury was prevented from making a decision as to whether it should consider gross wages or net wages in determining the award for economic loss. To support this position, Travelers cites *Norfolk & Western R. R. Co. v. Liepelt*, 444 U.S. 490, 100 S.Ct. 755, 62 L.Ed.2d 689 (1980), which held it was reversible error for the trial court to exclude evidence of income taxes payable on the decedent's parts and estimated future earnings. 444 U.S. at 493–99, 100 S.Ct. at 757–60, 62 L.Ed.2d at 693–97.

█ The Fenascis correctly point out, however, *Liepelt* was an action under the FELA and strictly limited in application to federal law, whereas, in this case we are dealing with state law and are bound under *Erie* to apply it. It is well settled in Louisiana the trial judge is to be granted wide discretion in determining the quantum of damages. *See, e.g., Brummerloh v. Firemen's Insurance Co.*, 377 So.2d 1301 (La. App.1979); *Clofort v. Matmoor, Inc.*, 370 So.2d 1305 (La.App.1979). When awarding the loss of future wages, the trial court has the option of using gross income, net income, or any figure in between that was reported on the victim's last tax return as a representation of his statement of wages. *Morgan v. Liberty Mutual Insurance Co.*, 323 So.2d 855, 863 (La.App.1975). *See also Roundtree v. Technical Welding & Fabrication Co.*, 364 So.2d 1325, 1335 (La.App.1978). "Because tax liability varies with the individual and is altered with changing circumstances, in some cases it is more appropriate to project lost earnings on a figure near the gross income." *Morgan*, 323 So.2d at 862. We therefore cannot conclude District Court abused its discretion in not allowing evidence of net income during trial of the damages issue in this case.

### III. F & M's Choice of Limits

District Court concluded F & M had selected uninsured motorist protection in limits lower than the bodily injury liability protection afforded by the policy, and concluded this particular Travelers' policy provided $5,000/$10,000 uninsured motorist protection. In reaching this decision, District Court found Travelers was initially solicited by Alexander and Alexander, the national insurance brokerage firm acting as agent for F & M in procuring insurance coverage, to submit a bid to underwrite the same risks F & M's then existing manuscript with Hartford Insurance Company provided. After Travelers bound the coverage, Alexander and Alexander submitted to Travelers a copy of the standard form automobile liability policy issued by Royal Globe Insurance Company to Natkin and Company, a wholly owned subsidiary of F & M. Thereafter, Travelers issued a comprehensive automobile liability policy to F & M with an effective policy period of April 1, 1974, to April 1, 1977, which extended coverage limits "equal to minimum financial responsibility limits of the state in which the vehicle is principally garaged." Travelers subsequently renewed this policy which had an effective policy period from April 1, 1977, to April 1, 1978. It was this second policy which was in effect on July 29, 1977, the date of the accident.

At the time the April 1974 policy was written, the Louisiana Uninsured Motorist Statute, L.S.A.–R.S. 22:1406, as amended and re-enacted by Act 137 of 1972, required uninsured motorist coverage be provided "[i]n not less than the limits described in the Motor Vehicle Safety Responsibility Law of Louisiana . . . ." *Id.* The minimum financial responsibility limit of the State of Louisiana in April 1974 was (and still is to this day) $5,000 per person and $10,000 per accident. Louisiana Motor Vehicle Safety Responsibility Law, L.S.A.–R.S. 32:900. District Court consequently construed the language in F & M's policy to be a selection of $5,000 per person/$10,000 per occurrence of uninsured motorist coverage in Louisiana.

The Fenascis' cross-appeal alleging the testimony at trial was replete, explicit, un-

contradicted, and unequivocal F & M wanted the Hartford policy duplicated. To support this assertion, the Fenascis cite extensive portions of the trial transcript, contending R.S. 22:1406 did not provide for uninsured motorist protection "in limits equal to the minimum financial responsibility limits" of this state for the simple reason Louisiana did not have a statute that demanded insurance coverage or the posting of a cash bond after an accident has occurred. Accordingly, they argue the Travelers' policy effective April 1, 1977, provided uninsured motorist protection in the limits of $1,000,000.

In response, Travelers submits the Fenascis' argument totally overlooks the "savings clause" or "grandfather clause" contained in the statute:

> ... Such coverage need not be provided in or supplemental to a renewal or substitute policy where the named insured has rejected the coverage or selected lower limits in connection with a policy previously issued to him by the same insurer. (emphasis added) La.R.S. 22:1406 as re-enacted and amended by Act 494 of 1975.

Travelers further argues the policy issued in April 1977 was a renewal policy and the named insured had previously selected lower limits which would be carried over to it, asserting the 1972 Uninsured Motorist Statute only required the insurer to offer limits of $5,000/$10,000 to an insured and Act 137 of 1972 gave the insured the right to request an increase in uninsured motorist limits.

In reviewing these contentions, District Court's findings of fact will not be set aside unless clearly erroneous. F.R.Civ.P. 52(a). We find they are not. In Endorsement 9950 of the second policy, the limits of uninsured motorist coverage were listed as "equal to minimum financial responsibility limits of the state where the automobile is principally garaged." During 1974 and up until the present, the Motor Vehicle Safety Responsibility Law of Louisiana, L.S.A.–R.S. 32:851 et seq., § 900(B)(2) required automobile policies insure

> ... the person named therein and any other person, as insured, using any such motor vehicle or motor vehicles with the express or implied permission of such named insured, against loss from the liability imposed by law for damages arising out of the ownership, maintenance or use of such motor vehicle or motor vehicles within the United States of America or the Dominion of Canada, subject to limits exclusive of interest and costs, *with respect to each such motor vehicle, as follows: five thousand dollars because of bodily injury to or death of one person in any one accident and*, subject to said limit for one person, *ten thousand dollars because of bodily injury to or death of two or more persons in any one accident*, and one thousand dollars because of injury to or destruction of property of others in any one accident. (emphasis added)

District Court thus properly determined under Louisiana law applicable to the first Travelers' policy, the minimum financial responsibility limits in effect were $5,000 per person and $10,000 per accident.

With respect to the second Travelers policy covering all F & M vehicles on the date of the accident in suit, the 1975 amendment to § 1406(D)(1)(a) provided:

> D. The following provisions shall govern the issuance of uninsured motorist coverage in this state.

> (1)(a) No automobile liability insurance covering liability arising out of the ownership, maintenance, or use of any motor vehicle shall be delivered or issued for delivery in this state with respect to any motor vehicle registered or principally garaged in this state unless coverage is provided therein or supplemental thereto, in not less than the limits of bodily injury liability provided by the policy, under provisions filed with and approved by the commissioner of insurance, for the protection of persons insured thereunder who are legally entitled to recover damages from owners or operators of uninsured or underinsured motor vehicles because of bodily injury, sickness, or disease, including death, resulting therefrom: provided,

however, that the coverage required under this Subsection shall not be applicable where any insured named in the policy shall reject the coverage or selects lower limits. *Such coverage need not be provided in or supplemental to a renewal or substitute policy where the named insured has rejected the coverage or selected lower limits in connection with a policy previously issued to him by the same insurer.* (Emphasis included by trial court)

(b) Any insurer delivering or issuing an automobile liability insurance policy referred to herein, shall also permit the insured, at his request, to increase the coverage applicable to uninsured motor vehicles provided for herein to any amount not in excess of the limits of the automobile liability insurance carried by such insured. (emphasis added.)

Based on this last sentence, we conclude whether F & M was trying to recreate the Royal Globe or the Hartford policy when it began doing business with Travelers is irrelevant because in either case, District Court properly determined the policy in effect at the time of the accident was a renewed policy, under which they could keep the lower limit, despite the 1974 and 1975 amendments to L.S.A.–R.S. 22:1406(D).

### IV. Reimbursement of Workmen's Compensation Insurer

At the time of the fatal accident, Employers National Insurance Company (Employers) was the workmen's compensation insurer of F & M. It paid all medical and burial expenses incurred by the deceased employees and has paid and continues to pay weekly benefits to their survivors. When the survivors of the three decedents filed this suit against Travelers seeking to recover the damages caused by the uninsured motorist, Employers intervened in the suit, seeking reimbursement for the amounts paid and to be paid by it to the survivors under the Louisiana Workmen's Compensation Act. After trial resulted in a jury verdict in favor of the Fenascis, District Court dismissed Employers' intervention, citing *Gentry v. Pugh*, 362 So.2d 1154 (La.App.1978), which held the uninsured motorist carrier was not a third person from whom the workmen's compensation insurer was entitled to recover under L.S. A.–R.S. 23:1101–1103[2] the amount it had paid in compensation to the employer who was injured by a third-party tort-feasor. *Gentry*, 362 So.2d at 1156.

Employers argues R.S. 23:1101 gives a clear and unmistakable right to the employer (or to his insurer) to seek reimbursement from a third person who is liable to the injured employee in damages and District Court erred in not enforcing its right. To hold otherwise, Employers contends, would be to grant a windfall double recovery to the injured employee (or his survivors) and to impose on the person liable for the damages exposure to liability for more damages than he caused. Since *Gentry* is not a decision of the highest court of Louisiana, Employers asserts this Court is not bound under *Erie* to follow it, especially when the decision is suspect.

Travelers points out, however, Employers neglects that the policy explicitly states:

**2.** Section 1101 provides:
"When an injury . . . for which compensation is payable . . . has occurred under circumstances creating in . . . [a] third person . . . a legal liability to pay damages . . . the aforesaid employee . . . may claim compensation . . . and the . . . award of compensation hereunder shall not affect the claim or right of action of the said employee . . . against such third person . . .
"Any person having paid or having become obligated to pay compensation under the provisions of this Chapter may bring suit against such third person to recover any amount which he has paid or become obligated to pay as compensation to such employee . . ."

Section 1102 requires that the person bringing the suit under 1101, whether the employee or the employer, give written notice of the suit to the other to facilitate intervention. Section 1103 generally provides that the employer's claim for reimbursement of compensation shall take precedence over the employee's claim ". . . if the damages are not sufficient" to satisfy the claims of both. *Gentry*, 362 So.2d at 1156.

Exclusions: This policy does not apply

\*     \*     \*     \*     \*     \*

(c) *so as to inure directly or indirectly to the benefit of any workmen's compensation or disability benefits carrier or any person or organization qualifying as a self-insurer under any workmen's compensation or disability benefits law or any similar law.* (Emphasis added.)

Moreover, Travelers submits this Court should affirm District Court's application of *Gentry,* as any other result would give Employers a benefit for which it had not bargained, paid or contracted.

■ Since this case was docketed with this Court, the Louisiana Fourth Circuit has decided *Bannon v. Edrington,* 392 So.2d 186 (La.App.1980), which is dispositive of the issue before us. In *Bannon,* the Louisiana Fourth Circuit Court of Appeals reaffirmed the Second Circuit's position in *Gentry,* holding the compensation payer has no claim under R.S. 23:1103 for recovery against an uninsured motorist insurer. The Louisiana Appellate Court reasoned (i) damages are due for breach of a duty, and an uninsured motorist carrier is not liable for breaching any duty, and (ii) the liability of the insurer is a "contractual liability," not a "legal liability" within R.S. 23:1101. *Bannon,* 392 So.2d at 187. In light of such holdings we cannot find District Court erred.

### V. Stacking

■ District Court applied the Louisiana Uninsured Motorist Statute, L.S.A.–R.S. 22:1406 to permit "stacking" of the insurance policies by the Fenascis. Travelers argues the Louisiana legislature intended R.S. 22:1406 be limited to those policies "delivered or issued for delivery" in Louisiana, that the instant policy was not "delivered" in Louisiana and that therefore Louisiana law does not apply. The Fenascis correctly point out and District Court properly found, however, the policy in question was in fact delivered in Louisiana. We also agree with District Court's conclusion Travelers' filing of the policy with the Louisiana Insurance Commissioner's Office constitutes a "delivery" in Louisiana and that long-standing Louisiana jurisprudence on the issue of "delivery" of insurance policies supports a finding of "constructive delivery" in Louisiana from the intention of the parties in providing that the policy includes uninsured motorist coverage.[3] Moreover, in the alternative, we find Louisiana has a stronger interest in applying its own law to this controversy than does any other state since it involves the deaths of Louisiana residents on Louisiana highways, and the claims of their Louisiana survivors under an insurance policy issued to cover, *inter alia,* vehicles principally garaged in Louisiana. *Deane v. McGee,* 261 La. 686, 260 So.2d 669 (1972) (concurring opinion by Tate, J., 260 So.2d at 672); *Graham v. American Casualty,* 261 La. 85, 259 So.2d 22 (1972); *Sutton v. Langley,* 330 So.2d 321 (La.App.1976).

The District Court allowed the stacking of coverage on all vehicles listed on the policy. In doing so the trial judge sought to apply the law of Louisiana as reflected in various decisions, including *Deane, supra,* and *Holmes v. Reliance Ins. Co.,* 359 So.2d 1102 (La.App.1978). We have carefully reviewed the authorities cited by the parties and we find that the District Court properly evaluated and applied the then prevailing Louisiana law. We are persuaded of the correctness of the District Court's conclusions.

The District Court is AFFIRMED.

---

**3.** *See Pruitt v. Great Southern Life Insurance Co.,* 202 La. 527, 12 So.2d 261 (La.1942), for a discussion of the definition of "constructive delivery."